# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GEMCAP LENDING I, LLC,    )
    )
    Plaintiff,    )
    )
v.    )          Case No. 18-2622-CM-JPO
    )
PERTL RANCH, LLC, PERTL RANCH    )
FEEDERS LLC, and OUTLAW FARMS &amp;    )
TRUCKING LLC,    )
    )
    Defendants.    )
—————————————————)
    )
CONTERRA AGRICULTURAL CAPITAL, )
LLC, an Iowa limited liability company, as    )
agent, loan servicer and power of attorney    )
for Rooster Capital LLC, a Delaware    )
limited liability company,    )
    )
    Intervenor,    )
    )
v.    )
    )
PERTL RANCH, LLC, a Kansas limited    )
liability company; JOYCE M. PERTL;    )
RONALD F. PERTL; WILLIAM SHANE    )
PERTL; MINDY J. MONTGOMERY;    )
OUTLAW FARMS &amp; TRUCKING, LLC a    )
Kansas limited liability company; RON-    )
ALD F. PERTL AND JOYCE M. PERTL    )
LIVING TRUST UNDER TRUST    )
INSTRUMENT DATED SEPTEMBER 19,    )
2006; RONALD F. PERTL IN HIS    )
CAPACITY AS TRUSTEE OF THE    )
RONALD F. PERTL AND JOYCE M.    )
PERTL LIVING TRUST UNDER TRUST    )
INSTRUMENT DATED SEPTEMBER 19,    )
2006; JOYCE M. PERTL    )
IN HIS CAPACITY AS TRUSTEE OF    )
THE RONALD F. PERTL AND JOYCE M.    )
PERTL LIVING TRUST UNDER TRUST    )
INSTRUMENT DATED SEPTEMBER 19,    )

**2006; GEMCAP LENDING I, LLC, a**           )
**Delaware limited liability company;**      )
**STEEPLECHASE ADVISORS, LLC, a**            )
**Minnesota limited liability company; and** )
**JAMES CULLEN,**                            )
                                             )
        **Third-Party**        )
        **Defendants.**        )
                                             )
_____)
                                             )
**BANCCENTRAL, NATIONAL**                    )
**ASSOCIATION,**                             )
                                             )
        **Intervenor,**        )
                                             )
**v.**                                       )
                                             )
**GEMCAP LENDING I, LLC, PERTL**             )
**RANCH, LLC, PERTL RANCH FEEDERS,**         )
**LLC, STEEPLECHASE ADVISORS, LLC**          )
**AS RECEIVER OF PERTL RANCH, LLC**          )
**AND PERTL RANCH FEEDERS, LLC,**            )
**MINDY MONTGOMERY, BANNER**                 )
**ADMINISTRATION COMPANY, INC.,**            )
**and CONTERRA AGRICULTURAL**                )
**CAPITAL, LLC as agent, loan servicer and** )
**power of attorney for ROOSTER CAPITAL**    )
**LLC,**                                      )
                                             )
        **Third-Party**        )
        **Defendants.**        )
                                             )
_____)

## MEMORANDUM AND ORDER

       This matter is before the court on the motion for partial summary judgment (Doc. 162) brought

by intervenor BancCentral, National Association ("BancCentral") on seven claims set forth in its

complaint in intervention (Doc. 118). The number of parties and interlaced claims makes this lawsuit

complex; however, it results from the unfortunate, but straightforward, financial collapse of Lucas,

Kansas-based Pertl Ranch, LLC, and related business entities, Pertl Ranch Feeders, LLC, and Outlaw Farms & Trucking, LLC (together "Pertl"). In brief, over years of doing business, Pertl had borrowed money from BancCentral, a commercial bank based in Oklahoma, where Pertl maintained its accounts. In 2017, Pertl arranged a large revolving loan from GemCap Lending I, LLC, a Delaware company based in Malibu, California ("GemCap"). With GemCap's assistance, Pertl used loan proceeds to pay off some of its debt to BancCentral, in exchange for BancCentral's release of claims on Pertl collateral. GemCap then asserted liens on the released collateral. Apparently, this transaction did not solve all of Pertl's financial problems, because thereafter it overdrew its bank accounts with BancCentral and sought additional loan monies from BancCentral. BancCentral agreed to additional loans, and proceeded to assert new liens over certain Pertl property. In the face of Pertl's defaults on its obligations to both lenders, the present dispute focuses on the lenders' competing claims over Pertl property. For the reasons explained below, the court grants BancCentral's motion for partial summary judgment.

### *Background*

Pertl consisted of a ranching and farm operation in Lucas, Kansas; a commercial feed yard in Hays; a trucking service; and a farm management and commodity sales service which operated throughout the state. Between January 2016 and May 2017, BancCentral loaned Pertl over $3 million in six transactions, secured by mortgages on real property, liens on cattle, crops, vehicles and machinery, as well as personal guaranties provided by Pertl family members.

In August 2017, Pertl sought to pay off these loans by refinancing the debt through GemCap, a family-owned commercial lender which specializes in lending to distressed companies that are unable to obtain financing through established institutions. According to BancCentral, Pertl's intent was to pay off only the loans secured by personal property. On August 3, 2017, to facilitate this transaction,

BancCentral, at Pertl's request, issued a letter in the form of a memo "To Whom It May Concern," stating in its entirety: "Banc Central will release all liens on cattle, machinery and any other chattel property if all loans are paid off, with the exception of the real estate loan. If you have further questions, feel free to give me a call." (Doc. 118-2.) The memo was signed "Martin" by BancCentral vice president Martin McNeil, and listed his full name, title and phone number below.

On August 10, 2017, GemCap filed a UCC-1 statement with the Secretary of State, identifying as collateral "ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST, WHETHER NOW EXISTING OR HEREAFTER ACQUIRED, IN AND TO ALL ASSETS OF THE DEBTOR, WHETHER TANGIBLE OR INTANGIBLE, AND THE PROCEEDS AND PRODUCTS THEREOF." (Doc. 118-4.) The debtor was identified as Pertl Ranch, Pertl Ranch Feeders and Outlaw Farm & Trucking. On August 11, GemCap set up a revolving loan for Pertl with a maximum credit line of $6.5 million, and provided an additional term loan of $1,725,000. These obligations were secured by what GemCap describes as "perfected liens" in all Pertl personal property, including crops, and real estate in Russell, Ellis and Lincoln counties, and additional personal property located in other Kansas counties. The loan agreement was signed by William Shane Pertl ("Shane") on behalf of all three Pertl entities, and by Joyce Pertl on behalf of Pertl Ranch; it included guarantees provided by Shane, Mindy Montgomery, Ronald and Joyce Pertl individually and on behalf of the Ronald F. Pertl and Joyce M. Pertl Living Trust under Agreement Dated September 19, 2006. (Doc. 1-1, at 10, 50.)

The initial Loan Agreement Schedule between Pertl and GemCap, dated August 11, 2017, specifies that Pertl was to use the proceeds for "payment in full to BancCentral National Association in order for BancCentral National Association to release its Lien on the Collateral (excluding its first mortgage on real property)." (Doc. 187-10, at ¶ 1(d).) On that date, GemCap wired $2,048,076.80 to Banc Central. (Doc. 187-13.) BancCentral acknowledges that, on August 14, 2017, its existing loans

were paid off, "with the exception of the real estate loan." BancCentral terminated its prior UCC-1 filing with the Kansas Secretary of State, which had covered all "Farm Machinery & Equipment;" "Farm Products and Supplies," and "Government Payments and Programs." (Docs. 118-1, 118-3.)

A few days later, on August 16, the maximum credit of GemCap's revolving loan was increased. Despite Pertl's apparent continued serious financial difficulties, GemCap increased its maximum credit several more times in the following year, and added a forbearance agreement which was repeatedly amended. Nevertheless, within a month of the revolving loan's initiation, in the fall of 2017, Shane approached BancCentral, explaining that he needed additional monies to support ranch operations while he continued to work things out with GemCap. BancCentral then conducted a lien search and determined that there were several vehicles not encumbered by liens recorded with the Kansas Department of Revenue. On December 6, 2017, BancCentral loaned Pertl $143,035, and recorded a security interest with the Department of Revenue on three trucks and a livestock semi trailer owned by Pertl Ranch. In addition, the loan was secured by the personal guaranty of Mindy Montgomery. (Doc. 118-9.) In March 2018, BancCentral agreed to another loan of $351,500. This loan was secured by duly recorded liens in an additional twenty-one Pertl Ranch vehicles, three trucks registered to Pertl Ranch Feeders, and four vehicles registered to Shane, as well as a "first lien mortgage" on six lots of real estate located on South Main Street in Lucas ("the Lucas Property"). Mindy Montgomery executed a second guaranty for "the payment and performance of each and every Debt, of every type, purpose and description" owed by Pertl Ranch to BancCentral. (Doc. 118-42.) A similar guaranty was provided by Pertl Ranch Feeders. (Doc. 118-43.) Before the month was out, Shane asked BancCentral for a third operating loan, this time for $561,020. (Doc. 118-44.) As security for this loan, BancCentral filed a UCC-1 statement with the Secretary of State, on March 29,

2018, for farm products, including crops, livestock and supplies owned by Pertl Ranch and Pertl Ranch Feeders. (Doc. 118-46.)

In August 2018, pursuant to the final loan amendment and forbearance agreement between Pertl and GemCap, James Cullen of Steeplechase Advisors, LLC, was appointed Chief Restructuring Officer to take control of Pertl's collections and disbursements. GemCap alleges that, following this final agreement, Shane Pertl made a sale of a "large number of cattle," without the authorization of Cullen and without recording any information in Pertl's financial books. This sale was purportedly made to Cargill, and the proceeds delivered to Shane's home address. On October 29, 2018, GemCap filed a UCC-3 statement with the secretary of state to claim additional Pertl collateral, identified as "All assets now owned or hereafter acquired of Debtor and all proceeds thereof and all rights and privileges with respect thereto including (without limitation) all accounts, contract rights, general intangibles, mineral rights (including but not limited to mineral lease rights), and all water rights (including but not limited to water use permits)." The filing identified the Debtor as all three Pertl entities. (Doc. 118-47.)

Soon after, citing numerous instances of default, GemCap filed its complaint in this court on November 19, 2018, against the three Pertl entities, seeking injunctive relief prohibiting Pertl from conveying any assets and requiring it to provide records on the alleged cattle sale. (Doc. 1.) GemCap also sought the appointment of a receiver to take over and liquidate Pertl assets. According to GemCap, Pertl's outstanding principal balance is over $13.1 million. James Cullen ("the Receiver") was appointed receiver on November 21, 2018. (Doc. 10.) Following entry of a consent order, feedlot assets of Pertl Ranch and Pertl Ranch Feeders were sold at auction on February 28, 2019. BancCentral and Shane Pertl objected to a second motion brought by the Receiver to sell further feed lot assets.

As this court's receivership proceedings were getting underway, on December 4, 2018, GemCap filed an additional lawsuit in Superior Court in California against, inter alia, BancCentral, Martin McNeil, Shane Pertl, Mindy Montgomery, Pertl's former CFO Chris Tucker, Pertl's lawyer Jonathan Davis and his firm Van Osdol, and twenty-five John Does. Defendants removed the lawsuit to federal court in California, and successfully moved to transfer venue to this court. (Case No. 2:19-cv-2481, Docket No. 120.) In its first amended complaint filed January 14, 2019, GemCap elaborates on its allegations concerning Shane's unauthorized cattle sale, and goes further to allege twelve counts of breach of contract, negligence, unfair business practices, fraud and other intentional torts, including a RICO charge against all defendants claiming that they engaged in a conspiracy to defraud GemCap. Although these claims are made in a separate lawsuit, the allegations on which they are based are relevant to the receivership proceedings because GemCap has raised BancCentral's alleged misconduct as an affirmative defense to BancCentral's claims to disputed collateral. Specifically, in its answer to BancCentral's complaint in intervention, GemCap claims the affirmative defenses of equitable estoppel, unclean hands, bad faith, misrepresentation, inequitable conduct and unjust enrichment in connection to Counts VII and VIII, which set forth BancCentral's claims to the Pertl vehicles.[1]

Since the California lawsuit was filed, Shane, Ronald and Joyce Pertl, along with Pertl Ranch and Pertl Ranch Feeders, have all filed for bankruptcy in the United States Bankruptcy Court for the District of Kansas. (Case Nos. 18-41605, 19-10162, 19-10130 and 19-10132.)

Back in the receivership proceeding, additional Pertl creditors have intervened: Conterra Agricultural Capital, LLC ("Conterra") and Morril & Janes Bank & Trust Company. Further, according to BancCentral, the "real estate loan" portion of its 2016 loan is now due and owing, as are the three loans for operating costs it made in late 2017 and early 2018, after GemCap had established

---

[1] Citing its own inadvertence for the original omission, GemCap has since sought leave of this court to amend its answer to assert these same affirmative defenses to BancCentral's Count IX (for foreclosure on the Lucas Property). (Doc. 204.)

its revolving loan with Pertl.  BancCentral's complaint in intervention, the court's present focus, sets forth nine claims against GemCap, Pertl (excluding Outlaw Farms & Trucking), the Receiver, Mindy Montgomery, Conterra[2] (as agent for Rooster Capital LLC), and Banner Administration Company, Inc. ("Banner") (which may also have a claim on Pertl real property).  Only GemCap and the Receiver have filed answers to the complaint.

BancCentral now moves for partial summary judgment on seven of its claims:  Counts I – IV against Pertl Ranch for the non-payment of four promissory notes, including the January 2016 one entered into before GemCap alleges it provided funds to Pertl to pay off BancCentral's loans, and three entered into between December 2017 and March 2018; Count V against Pertl Ranch Feeders on its guaranty of BancCentral's loan to Pertl Ranch; Count VI against Mindy Montgomery on her guaranty of Pertl Ranch's debt to BancCentral; and Count IX against the Receiver, Pertl Ranch, GemCap, Banner and Conterra to foreclose on the multi-lot Lucas Property.  Only GemCap has objected to BancCentral's motion, and it only addresses Count IX.  In its answer, the Receiver conceded that BancCentral is entitled to enforcement of its rights under the four promissory notes which are the subject of Counts I–IV.  (Doc. 132.)

## Analysis

### Standard of review

Summary judgment, or partial summary judgment, is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine factual dispute requires more than a mere scintilla of evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material

---

[2]  Conterra has since stipulated that it disclaims any interest in the Lucas Property; and further that any judgment in Conterra's favor shall not become a judgment lien on the Lucas Property.  (Doc. 134.)

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248. Instead, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* While the evidence need not be presented in a form that would be admissible at trial, the "content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e). For example, inadmissible hearsay statements contained in a summary judgment affidavit will be disregarded by the court, as those statements would not be admissible at trial. *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252.

If a non-moving party does not respond to a motion for summary judgment, the court may consider the moving party's facts to be undisputed for the purposes of analyzing the motion. Fed. R. Civ. P. 56(e). However, even if the non-moving party fails to file any response, the court may only grant summary judgment after it determines that the evidence produced by the moving party demonstrates that there are no genuine and material factual disputes, and that the moving party is entitled to judgment as a matter of law. *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

> By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and

properly supported in the summary judgment motion. But only if those facts entitle the
moving part to judgment as a matter of law should the court grant summary judgment.

*Id.* at 1195.

### *Counts I – VI*

BancCentral has provided the court with extensive documentation demonstrating the history of

its loans with Pertl, including copies of the promissory notes and personal guaranties provided in

connection with those loans. These documents are supported by the sworn declaration of Martin

McNeil, the loan officer who worked directly with Pertl when the loans were made. (Doc. 163-1.) No

objection has been filed by any third-party defendant in response to BancCentral's motion for

summary judgment on Counts I–VI. After thorough review, the facts as established by BancCentral in

connection with these six counts are deemed admitted and the court determines that BancCentral is

entitled to judgment as a matter of law. Consequently, summary judgment is granted in favor of

BancCentral on Counts I, II, III, IV, V and VI of its complaint in intervention. *See Bank Midwest, N.A.*

*v. Millard*, No. 10-2387-JAR, 2012 WL 4359060 (D. Kan. Sept. 24, 2012).

### *Count IX: Lucas Property*

In Count IX of its complaint in intervention, BancCentral asks this court to enter a foreclosure

decree ordering that BancCentral's interest in the Lucas Property is senior to Pertl's interest and that,

upon foreclosure, the interests of Pertl, the Receiver, Banner and GemCap are terminated. The Lucas

Property mortgage was provided by Pertl Ranch as security for BancCentral's March 14, 2018,

$351,000 loan. The mortgage bears the same date and is signed by Shane, Mindy Montgomery,

Ronald Pertl and Joyce Pertl. The property is described as "Lots One (1), Two (2), Three (3), Four (4),

Twenty-One (21) and Twenty-Two (22) in Block Three (3) in the City of Lucas, Russell County,

Kansas." (Doc. 163-10.) The mortgage was recorded with the Russell County Register of Deeds on

March 19, 2018. The property is located at 107 South Main Street in Lucas; it is commercial property,

rather than agricultural, and has served as Pertl's business office. The mortgage is presently in default because Pertl has failed to make payments on the March 14, 2018, promissory note, and because Pertl Ranch is now in receivership. On April 10, 2019, BancCentral recorded a *lis pendens* and Notice of Commencement of Action on the property with the Russell County Register of Deeds. (Doc. 130-1.) BancCentral argues that it has met all the required elements for foreclosure and that it is entitled to judgment as a matter of law.

In opposition, GemCap claims that it too has a first-priority claim on the Lucas Property, in the form of a "Mortgage, Assignment of Rents, Security Agreement and Fixture Filing" pledged by Pertl Ranch to GemCap on November 28, 2018, and signed by Shane. (Doc. 187-14). The legal description of the mortgaged property establishes that it is the same real property mortgaged to BancCentral. It was also recorded with the Russell County Register of Deeds, but over eight months later, on December 4, 2018. GemCap alleges that, as evidenced by the duplicate Lucas Property mortgages and other transactions involving Pertl real and personal property, BancCentral "successfully conspired with Pertl and their officers to defraud GemCap out of its collateral." (Doc. 187, at ¶ 89.) Consequently, GemCap argues that its mortgage interest in the Lucas Property, which it concedes was effectuated *after* BancCentral's, is nevertheless superior to BancCentral's "as a matter of equity" because of BancCentral's misconduct. *See Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 968 F. Supp. 1422, 1426 (D. Kan. 1997) ("A mortgage foreclosure action is equitable in nature.") (citing *Bank of Whitewater v. Decker Invs.*, 710 P. 2d 1258, 1263 (Kan. 1985)).

To support its allegations of BancCentral's tortious conduct, GemCap includes 96 "Additional Material Facts" in its opposition to BancCentral's motion for partial summary judgment. Among other allegations, GemCap claims that BancCentral agreed to release its liens on Pertl property in order to induce GemCap to enter into the revolving loan agreement with Pertl, but then "reneged on its

representations and moved to assert priority over certain of the very assets to which it had agreed to release its liens." According to GemCap, BancCentral and Pertl engaged in an extended coordinated effort to "pressure" GemCap to advance more funds to pay off Pertl's bank overdrafts, debt for which BancCentral would otherwise have had no security. Although GemCap accuses BancCentral of "conspiring" with Pertl, "hijacking" GemCap's collateral, "reneging" on its assurances, "extracting" money from GemCap, "devising strategies" to "subvert" GemCap's collateral, and "fraudulently concealing" facts from GemCap, it offers very little in support of these allegations. GemCap also makes allegations that characterize BancCentral's intent, understanding, motivations and expectations, about which it has no first-hand knowledge and for which it has no proper support. GemCap offers two sworn declarations: one from GemCap co-president Richard Ellis, which includes these unsupported allegations (Doc. 187-1); and one from Todd Lander, its counsel in the present matter, verifying the authenticity of attached documents (Doc. 187-15). In the way of evidence that might prove admissible at trial, in addition to the various loan documents, GemCap provides copies of emails between Pertl and BancCentral that reflect that BancCentral knew Pertl was requesting advances from GemCap to, among other uses, pay off its overdrawn bank accounts. According to GemCap, these emails demonstrate BancCentral's wrongful collusion with Pertl. GemCap also draws the court's attention to portions of Martin McNeil's deposition testimony where he acknowledges that he and others at BancCentral knew that Pertl was borrowing money from GemCap and that some of those funds were being used to pay Pertl's debt to BancCentral.

The Federal Rules of Civil Procedure require that, at summary judgment, a party asserting a fact must support the assertion by citing to the record, with material that would be admissible in evidence. Fed. R. Civ. P. 56(c)(1), (2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and

show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). This "personal knowledge standard" means that an affidavit is inadmissible unless the witness could have "perceived or observed" what he or she is attesting to. *Argo*, 452 F.3d at 1200 (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)). "[A] mere statement of belief . . . is insufficient to support summary judgment . . . ." *Tavery v. United States*, 32 F.3d 1423, 1426–27 n.4 (10th Cir. 1994). Moreover, legal conclusions, as well as other conclusory or self-serving declarations, do not provide appropriate support for a party's assertions. *Brown v. Gray*, No. 06-3003-JTM, 2011 WL 6091738, at *5 (D. Kan. Dec. 7, 2011). "To enforce this rule, the court ordinarily does not strike affidavits, but simply disregards those portions that are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e)." *Stevens v. Water Dist. One of Johnson Cty.*, 561 F.Supp. 2d 1224, 1232 (D. Kan. 2008).

In accordance with these guidelines, the court must separate the portions of GemCap's "factual" statements that are not supported by evidence, as well as those that simply reflect GemCap's opinions about BancCentral's conduct or the mental state of its employees. Once the unfounded accusations, innuendo and hyperbolic language are removed, the underlying transactions do not appear so wrong. In August 2017, Pertl, with GemCap's financial assistance, paid off the portion of its loans from BancCentral that were secured by personal property. BancCentral then released its liens on all Pertl personal property. When approached by Shane Pertl later in the year for further financial assistance, BancCentral conducted an asset search and determined that certain personal property and real property (the Lucas Property) had not been secured by GemCap. BancCentral claimed an interest in that property and advanced funds to Pertl. Over eight months later, as Pertl's financial situation continued to deteriorate, GemCap took a second priority mortgage in the Lucas Property. Employees

of BancCentral were aware that Pertl was drawing on its revolving loan with GemCap in order to pay back what it owed to BancCentral.

These kinds of commercial transactions are not tortious or otherwise wrongful. *See Gillenwater v. Mid-American Bank & Trust Co.*, 870 P.2d 700, 704–05 (Kan. Ct. App. 1994*); see also Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009); *Cobank, ACB v. Reorganized Farmers Co-op. Ass'n.*, 170 F. App'x 559, 565–66 (10th Cir. 2006); *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 334 (Cal. Ct. App. 1991) ("It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid."). The equitable defenses asserted by GemCap, such as unclean hands and bad faith, require a showing of misconduct on the part of the claimant arising out of the transaction in litigation. *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004). The Kansas Supreme Court checks for "willful conduct which is fraudulent, illegal or unconscionable." *Matter of Marriage of Jones*, 921 P.2d 839, 845 (Kan. Ct. App. 1996), *see also Waste Connections of Kan. v. Ritchie Corp.*, 298 P.3d 250, 271–72 (Kan. 2013); *Fleetwood Enters., Inc. v. Coleman Co., Inc.*, 161 P.3d 765, 777 (Kan. Ct. App. 2007). No misconduct on the part of BancCentral has been demonstrated. Consequently, the court will not exercise its equitable powers to prevent BancCentral from obtaining the relief it seeks. GemCap has failed to demonstrate a genuine issue of material fact in connection with BancCentral's first-priority mortgage on the Lucas Property, or with BancCentral's conduct in accepting that mortgage. No other party has objected to BancCentral's motion for partial summary judgment, and BancCentral has established that it is entitled to judgment as a matter of law on Count IX. For these reasons, the court grants partial summary judgment in BancCentral's favor on Count IX of its complaint in intervention.

## *Conclusion*

For the reasons set forth herein, the court grants partial summary judgment in favor of BancCentral, and against GemCap and other third-party defendants, on Counts I, II, III, IV, V, VI and IX of its complaint in intervention. If BancCentral seeks a Decree of Foreclosure prior to final judgment being entered on all claims in this case, the parties are encouraged to consult and attempt to submit a joint proposed Final Judgment on Count IX and Decree of Foreclosure, based on the court's substantive rulings in this Memorandum and Order. If the parties are unable to reach an agreement, they should jointly notify the court by email so that the court can determine how to proceed on the issue.

**IT IS THEREFORE ORDERED** that BancCentral's motion for partial summary judgment is is granted. (Doc. 162.) GemCap's motion to amend its answer to BancCentral's complaint in intervention is denied as moot. (Doc. 197.) With the possible exception of a final judgment on Count IX, as referenced above, no other judgment shall enter until all claims are resolved.

Dated this <u>27th</u> day of November, 2019, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**